UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| GLENDA JACQUELINE PRADO, | : | Case No. 3:16-cv-306 |
| Plaintiff, | : | District Judge Walter H. Rice |
| | : | Magistrate Judge Sharon L. Ovington |
| vs. | : | |
| DEPUTY JEFFREY THOMAS, *et al.*, | : | |
| Defendants. | : | |

# DECISION AND ENTRY

## I. Introduction

Plaintiff brings this action alleging Defendants violated her constitutional rights to equal protection and due process; conspired to violate her rights; and failed to train and supervise employees.

This case is presently before the Court upon Plaintiff's Motion to Compel (Doc. #47), Defendants' Response in Opposition (Doc. #48), and Plaintiff's Reply (Doc. #49).

## II. Background

Plaintiff is a legal permanent resident of the United States. (Doc. #25, *PageID* #25). Her original language is Spanish, her second is Arabic, and her third is English. *Id.* at 119. Plaintiff "has a strong and apparent Spanish accent[.]" *Id.* The present case stems from two series of events. The first involves Plaintiff's arrest.

Specifically, Plaintiff alleges that on August 9, 2015, Defendant Jeffrey Thomas pulled her over; improperly administered field sobriety tests; refused to explain the test

instructions; and with Defendant Sean Joseph Kessel, arrested her on suspicion of operating a vehicle under the influence of alcohol or drugs. (Doc. #25, *PageID* #s 118-20). Upon arrival at the jail, Plaintiff was not initially booked because her husband was coming to pick her up. *Id.* at 121.

While she waited, Defendant Donna Fallis instructed Plaintiff to perform a urine test. *Id.* She complied. *Id*. However, when Plaintiff refused to sign the unsealed, unlabeled urine vial, Defendant Thomas threw it in the trash and told Defendant Fallis to book Plaintiff. *Id*. "Plaintiff was ordered to disrobe and was ordered to take a cold shower and given a towel used for cleaning the floor, … Plaintiff was then placed in jail clothing, …." *Id.* at 121-22. Her name (and photograph) was listed online as an inmate of the Greene County Jail. *Id.* at 122. When Plaintiff's husband arrived, she was released. *Id*.

Later that day, Defendant Thomas informed Plaintiff's husband that his supervisor, Defendant Jimmy Combs, told him that it was wrong to throw Plaintiff's urine test away and as a result, Defendant Thomas removed the test from the trash and planned to submit it for analysis. *Id*. According to Plaintiff, "Defendant Combs was ordered by Defendant Major Kirk Keller or a subordinate at his direction to have Thomas fish the Plaintiff's urine sample from the trash and submit it for analysis …." *Id.* at 126.

On August 10, 2015, Plaintiff was charged in Fairborn Municipal Court with "OVI drug impairment." *Id.* at 123. As part of discovery in the criminal case, Plaintiff requested all cruiser videos, and initially, Defendant Thomas only produced a six-minute video of him transporting Plaintiff to the jail. *Id*. However, after further motions were

2

filed, Defendant Thomas produced "the nearly complete arrest video on a format that cannot be accessed and on a DVD that did not include date and time …." *Id*. On October 1, 2015, Defendant Thomas received the results of Plaintiff's urine test— Plaintiff had no drugs or alcohol in her system. *Id*. Plaintiff learned of these results on October 10, 2015, and her charge was dismissed on October 11, 2015. *Id*.

The second series of events involves Plaintiff's employment as a caseworker at the Greene County, Ohio, Children's Services Board. *Id.* at 125. After she was terminated from that position on March 11, 2015, Plaintiff filed a complaint for employment discrimination with the Equal Employment Opportunity Commission. *Id*. Plaintiff specifically named Beth Keller, the wife of Defendant Major Kirk Keller. *Id*. Defendant Keller is the supervisor of the Greene County, Ohio Jail and road patrol. *Id*.

These two series of events collided on September 9, 2015 at a mediation conference regarding Plaintiff's EEOC claim. *Id.* at 126. Plaintiff alleges that Defendant Huddleson, the Greene County Administrator, "refused to offer any resolution to the EEOC complaint and prosed [sic: probably "proposed"] to provide documents to the mediator and counsel which contained Plaintiff's arrest record and inmate photograph, … [He] attempted to use these documents to intimidate Plaintiff in her complaint for employment discrimination, … [He] was supplied these documents by the Greene County, Ohio Sheriff's Office from Jail records under Defendant Major Kirk Keller's control …." *Id*.

**III.     Standard of Review**

Under the Federal Rules of Civil Procedure, the scope of discovery is "traditionally quite broad." *Lewis v. ACB Bus. Servs, Inc.,* 135 F.3d 389, 402 (6th Cir. 1998) (citing *Mellon v. Cooper–Jarrett, Inc.,* 424 F.2d 499, 501 (6th Cir. 1970)). The modern view remains so, albeit with guideposts:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). "[T]his desire to allow broad discovery is not without limits and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant." *Scales v. J.C. Bradford & Co.,* 925 F.2d 901, 906 (6th Cir. 1991).

A party may file a motion to compel discovery when the opposing party fails to provide proper responses to requests for production under Rule 34, fails to answer an interrogatory submitted under Rule 33, or fails to make a disclosure required by Rule 26(a). Fed. R. Civ. P. 37(a)(3). "[T]he proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant." *Mayer v. Allstate Vehicle & Prop. Ins. Co.,* No. 2:15-cv-2896, 2016 WL 1632415, at *2 (S.D. Ohio Apr. 22, 2016) (Deavers, M.J.), *objections overruled,* No. 2:15-cv-2896, 2016 WL 2726658 (S.D. Ohio May 10, 2016) (Marbley, D.J.) (quoting *Guinn v. Mount Carmel Health Sys.*,

No. 2:09-cv-226, 2010 WL 2927254, at *5 (S.D. Ohio July 23, 2010) (Kemp, M.J.); *Clumm v. Manes*, No. 2:08-cv-567 (S.D. Ohio May 27, 2010) (King, M.J.)); *see also United States ex rel. Shamesh v. CA, Inc.,* 314 F.R.D. 1, 8 (D.D.C. 2016) ("In cases where a relevancy objection has been raised, the party seeking discovery must demonstrate that the information sought to be compelled is within the scope of discoverable information under Rule 26."). If the proponent meets its initial burden, then "the party resisting production has the burden of establishing that the information is either not relevant or is so marginally relevant that the presumption of broad disclosure is outweighed by the potential for undue burden or harm." *Pillar Title Agency v. Pei,* No. 2:14-cv-525, 2015 WL 2238180, at *3 (S.D. Ohio May 12, 2015) (Kemp, M.J.) (citing *Vickers v. Gen. Motors Corp.,* No. 07-2172 M1/P, 2008 WL 4600997, at *2 (W.D. Tenn. Sept. 29, 2008)).

## IV. Discussion

Plaintiff initially sought to compel responses to interrogatories and/or requests for production in four areas: computer communications, raw footage of Plaintiff's arrest, telephone records, and a Greene County Board of Commissioners meeting. However, Plaintiff subsequently agreed that "Defendants responded …." to her request for "[a]ll computer communications of any type or media …." (Doc. #47, *PageID* #366); (Doc. #49, *PageID* #469). Accordingly, that issue is moot.

### A. Raw Footage

In Plaintiff's Second Request for Production to Defendant Keller, she requested "All raw footage from the cruiser camera and audio recording devices of the cruisers of

Deputy Jeffrey Thomas and Deputy J. Kessell of the stop, detention and arrest of Plaintiff on August 9, 2015." (Doc. #47, *PageID* #376). Defendant Keller objected on the grounds that the request was overly broad and ambiguous and responded that he "is not in possession of the requested material, nor does he have access to such material, as it no longer exists consistent with the Greene County Ohio and Greene County Sheriff's Office Schedule of Records Retention and Disposition (RC-2)." (Doc. #48-7, *PageID* #441).

In Plaintiff's supplemental interrogatories, she asked Defendant Keller, "Are copies or original recordings of cruiser cam video and/or audio recordings of the Greene County, Ohio Sheriff s Office forwarded to and/or located in any other agency or location? If so, where?" (Doc. #48-8, *PageID* #443). Defendant Keller again objected and responded: "The cruiser camera footage and audio recordings of Plaintiff's arrest on August 19, 2015 were disposed of in accordance with Greene County Ohio and Greene County Sheriff's Office Schedule of Records Retention and Disposition (RC-2) in place at the time. They were not sent to any other location other than [to] Plaintiff's counsel." *Id*.

Plaintiff contends that Defendant Keller's responses are not entirely accurate. (Doc. #47, *PageID* #367). She explained, "discovery revealed the existence of a previously undisclosed server that automatically recorded data from cruisers and was tamper-proof. Previous responses only concerned DVDs taken from the cruisers." (Doc. #49, *PageID* #470). Plaintiff incorrectly claims that she sought "additional clarification and a sworn statement …" from Defendants' counsel. (Doc. #47, *PageID* #367). Instead, she requested "*either* that I be provided some documentation of this process *or* a

6

sworn statement by someone with the responsibility for this server explaining not only what policy or procedure is involved, but also, mechanically and physically, how such deletions are done." *Id.* at 386 (emphasis added).

On January 4, 2018, the Greene County "Sheriff's Office IT/tech individual" responded to several of Plaintiff's questions concerning the automatic purging of videos and the specific videos in question.[1] *Id.* at 391. The IT person explained that there are two videos associated with the present case—both of which are "offline." *Id.* She included screen shots of "Video Logs from both videos" that show both videos were "deactivated" on July 20, 2016. *Id.* at 392. The IT person also generally explained the former and current retention schedules:

> The dates would have to be confirmed, but the Retention Schedule and the General Order have both been updated as it pertains to in[-]car video. The old Retention Schedule only included Schedule 11-70 DVDS – Recorded from patrol cars' in-car camera – DVDs may be erased and reused after sixty (60) days and No RC-3 required for destruction. I do not see where the Retention Schedule covered anything other than the DVDs; no specifics from the server storage as we have now. This was changed and the server side added to our current schedule of 16-81, 16-82, 16-83 and 16-84 (below). The date the addition for the server side of the L3 to the Retention Schedule would need to be confirmed with Robin in County Archives.

*Id.* Plaintiff takes this to mean that the IT person cannot confirm the dates the particular videos in this case were purged. (Doc. #49, *PageID* #470). But that is not correct. The IT person unequivocally states that the videos related to Plaintiff's arrest are "offline"

---

[1] Defendants' attorney forwarded these responses to Plaintiff's attorney.

and "deactivated." The IT person is less definitive when discussing new and old retention schedules generally and when they changed.

The retention schedules were not the subject of the interrogatory or request for production. Defendant Keller's response to Plaintiff's interrogatory and request for production establish that he does not have a copy of the videos, is not aware of any copies of the videos, and does not have a way to obtain a copy of the videos. The IT person's response supports Defendant Keller's response. Accordingly, Plaintiff's Motion to Compel production of the raw footage of Plaintiff's arrest is denied.

   B.   **Defendant Keller's Phone Records**

In Plaintiff's Third Request for Production of Documents to Defendant Keller, she requests:

> All cellphone and land line telephone records for phones *used by you* of calls, texts and/or communications of any sort to communicate with other Defendants in this case and/or employees of Greene County, Ohio Department of Job and Family Services, Children's Services, for the period August 8, 2015 through August 11, 2015.

(Doc. #48-1, *PageID* #418 (emphasis in original)). Defendant Keller objected but nevertheless responded that "the only phone used by him was his personal cellular phone." *Id.* at 419. Further, he indicated that he "did not communicate with other Defendants in this case and/or employees of Greene County, Ohio Department of Job and Family Services, Children Services for the stated period on his cellular phone except for his wife, Beth Keller on August 8 and 11." *Id*. Defendant Keller also provided his cell phone record from those dates and a brief explanation: "There were calls to a Greene

8

County Deputy Banks and a Greene County Lieutenant Wooten on August 8th as that was the final day of the Greene County Fair detail. On August 11th there was a call to Greene County Captain Goodman, who is the Assistant Jail Administrator that supervises the Adult Detention Center." *Id.*; (Doc. #48-13, *PageID* #457). The last four digits of every phone number is redacted.

Plaintiff alleges that Defendant Keller's response is inadequate. "The redaction defeats the purpose of the request. Plaintiff is interested in conversations between parties and with employees of Greene County Children's Services." (Doc. #49, *PageID* #469).

Defendant Keller's apprehension to provide the complete telephone numbers of individuals not involved in this case is reasonable in light of their privacy interests. Accordingly, Defendant Keller shall file under seal an unredacted copy of his cell phone record to the Court by March 8, 2018 for *in camera* review. Defendant Keller shall identify the individuals to whom the telephone numbers belong.

### C. Defendant Huddleson

In Plaintiff's "Additional Interrogatories," she asks that Defendant Huddleson:

> Please state all items discussed in any manner by personnel employed by Greene County, Ohio, including but not limited to elected officials, employees, attorneys and/or consultants retained by Greene County, Ohio at the Greene County, Ohio Board of Commissioners' meeting on August 20, 2015 both prior to or after the official meeting was concluded.

(Doc. #48-16, *PageID* #466).

Defendant Huddleson objected on the grounds that it is "Overly broad, vague, ambiguous, and unduly burdensome. This Interrogatory fails to specify the topics of

9

discussions requested or provide a reasonable time period or limited to specific individuals regarding when any requested discussions took place." *Id.* at 466. Further, he "objects to the foregoing Interrogatory on the basis that it is not relevant to any party's claim or defense and proportional to the needs of the case." *Id*. Finally, "Defendant objects to the extent it seeks items discussed with attorneys for Greene County, Ohio on the basis of attorney client privilege." *Id*.

Defendants' counsel further explained to Plaintiff's counsel,

> [T]he reason we have not been able to respond is that it is simply so broad, I am not certain what it is you are asking for. To just say you want to know what officials, employees, attorneys and/or consultants discussed before and after a meeting without any context or topic, I have no idea what you are seeking. Frankly, they could have discussed what they had for breakfast, but I'm fairly certain that is not what you are interested in. Please clarify and specify whether there is a specific topic or individual that you are inquiring about to see if it was discussed and if so, what was discussed.

(Doc. #47, *PageID* #401).

Plaintiff asserts, "if Plaintiff had any knowledge of who Huddleson spoke to or the topics of conversation, as suggested by [opposing] Counsel …, she would not have had to ask the question." (Doc. #49, *PageID* #469).

Plaintiff has the initial burden of showing that the information she seeks is relevant to either party's claims or defenses. *Mayer,* 2016 WL 1632415, at *2 (citations omitted). She has not done so. Further, because her request lacks any subject restrictions, it is overly broad. Accordingly, Plaintiff's motion to compel a response to this interrogatory is denied.

Plaintiff also requests, "Any and all notes taken at the Greene County, Ohio Board of Commissioners' meeting on August 20, 2015." (Doc. #48-16, *PageID* #466). Defendant Huddleson objected to this request on the grounds that it is "Overly broad, vague, and ambiguous." *Id*. Further, "it is not relevant to any party's claim or defense and proportional to the needs of the case." *Id.* at 467. Defendant Huddleson nevertheless responded: "See attached minutes of Board of County Commissioners Board Meeting and work session on August 20, 2015, Bates Nos. PRADO S0001964-1967; PRADO S0001981-1984. Previously provided on September 1, 2017." *Id*.

Defendants' counsel reported to Plaintiff's counsel, "the only 'notes' of the meeting are the meeting minutes. Those have been provided." (Doc. #47, *PageID* #401). But, it is not clear from Defendant Huddleson's response that the only notes taken at the Board of County Commissioners' Board Meeting are the meeting notes. Accordingly, he must provide any additional notes taken at the Board Meeting or, if warranted, must certify that he has conducted a reasonable search and found no such notes exist.

**IT IS THEREFORE ORDERED THAT**:

Plaintiff's Motion to Compel is GRANTED, in part, and DENIED, in part.

February 22, 2018  *s/Sharon L. Ovington*
　　　　　　　　　　　　　　　　　　　　Sharon L. Ovington
　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge