IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

GLENDA JACQUELINE PRADO,

        Plaintiff,

        v.

DEPUTY JEFFREY THOMAS, et. al.,

        Defendants.

:

:

:

:

Case No. 3:16-cv-306

JUDGE WALTER H. RICE

---

DECISION AND ENTRY SUSTAINING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT (DOC. #57) AS TO ALL DEFENDANTS ON
QUALIFIED IMMUNITY GROUNDS EXCEPT PLAINTIFF'S CLAIM
AGAINST THOMAS ON ALLEGED EXCESSIVE FORCE CLAIM
WHICH IS SUSTAINED ON OTHER GROUNDS; TERMINATION
ENTRY

---

This matter is before the Court pursuant to a Motion for Summary

Judgment, Doc. #57, filed by Defendants, Greene County Sheriff's Deputies

Jeffrey Thomas ("Thomas"), J. Kessel ("Kessel"), Donna Fallis ("Fallis"), Jimmy

Combs ("Combs"), Jason Tavner ("Tavner"), Major Kirk Keller ("Keller") and

Greene County Administrator Brian Huddleson ("Huddleson) (collectively

"Defendants").[1] Plaintiff Glenda Jacqueline Prado's response, Doc. #70, and

---

[1] In both her original Complaint, Doc. #1, filed July 21, 2016, as well as her second
Complaint, Doc. #25, filed November 14, 2016, Plaintiff named as Defendants
"Other Unnamed Greene County, Ohio Sheriff's Deputies." However, Plaintiff has
never identified these Defendants, let alone substituted them as Defendants, and
has never completed service as required by Fed. R. Civ. P. 4(m). Accordingly, the

attachments, Doc. ## 71, 72 and 73, and Defendants' reply and supplemental memorandum, Doc. ## 61 and 74, respectively, have also been reviewed and considered by the Court.[2]

Plaintiff has alleged in her Complaint that on August 9, 2015, she was falsely arrested and booked in the Greene County Jail for "suspicion of OVI." She claims that the arrest was due to her "ethnicity, race and gender," although in her deposition she stated the false arrest was in retaliation for her filing an EEOC complaint on May 11, 2015, against Greene County Children's Services as a result of her termination as a caseworker for the agency. Doc. #25, PAGEID##120 and124; Doc. #71-1, PAGEID#1526; Doc. # 56, PAGEID##582-583.  Plaintiff's Complaint asserts jurisdiction "pursuant to 42 U. S. C. §§1983 and 1988 and the

_____

only Defendants in this litigation are those seven Defendants specifically identified by name.

[2] Although Plaintiff timely responded to Defendants' Motion for Summary Judgment, Docs. ##59 and 60, Defendants filed a motion to strike these pleadings, Doc. #62, pursuant to S.D. OH Civ. R. 7.2(a)(3) and this Court's General Order No. 12-01. Defendants also filed an Objection to three exhibits submitted by Plaintiff in her response to Defendants' motion, due to Plaintiff's failure to authenticate the documents or establish their relevance. Doc. #63. Plaintiff responded to both the motion to strike and objections. Docs. ##64 and 65. Thereafter, the Court issued its Decision and Entry, Doc. #68, noting, among other things, that none of the thirty-four exhibits attached to Plaintiff's affidavit was authenticated, Fed. R. Evid. 901, and that many were not self-authenticating. Fed. R. Evid. 902. However, the Court overruled, without prejudice, both the motion to strike and objection and permitted Plaintiff to refile, within 14 days, an amended memorandum in response to Defendants' summary judgment motion and to authenticate the exhibits attached to the affidavit. Defendants were also given leave to file a supplemental reply. Plaintiff timely complied with the Court's Decision and Entry, Doc. ## 71, 72 and 73, and Defendants have filed their supplemental reply, Doc. #74. The Defendants have not renewed their motions.

Fifth and Fourteenth Amendments," as well as "28 U. S. C. §§1331 and 1341 (3) and (4) and 1343 . . ." Doc. #25, PAGEID#115. Four causes of action are alleged: Deprivation of Constitutional Rights Equal Protection; Deprivation of Constitutional Rights Due Process; Conspiracy for Deprivation of Constitutional Rights Equal Protection and Due Process; and Failure to Train and Supervise. Although the Complaint "invokes this Court's supplemental jurisdiction . . . of state causes of action included herein . . ." the Complaint does not allege any state causes of action. *Id.* Defendants have moved for summary judgment on all causes of action as well as on the issue of qualified immunity for all Defendants.

## I.    Background

On the morning of August 9, 2015, at approximately 1:00 a.m., Plaintiff, a legal permanent resident of the United States from Ecuador with a "strong Spanish accent" and "Latin features," stopped at a convenience store in Beavercreek, Ohio. Doc. #70, PAGEID#1484; Doc. #71-1, PAGEID#1524. At the time she stopped, Plaintiff was on her way home following a night of dinner and dancing with a friend. *Id.* As she was completing her purchase of water and a Sprite, she saw Thomas in the store, sitting in a chair and watching her. Doc. #56, PAGEID##516-17; Doc. #71-1, PAGEID#1524. Plaintiff, who was wearing a short skirt, felt uncomfortable. Doc. #71-1, PAGEID#1524; Doc. #56, PAGEID#516. Standing in the checkout line, Plaintiff spoke audibly to the clerk and noticed that a white male was also in the checkout line with her. The man, in his mid-30s, was

wearing a cap and a checkered shirt over a tee-shirt. *Id.* Plaintiff then exited the store and went to her car which was parked in front of the store. From her car, Plaintiff saw Thomas approach the clerk and say something to her, following which Plaintiff observed the clerk look towards Plaintiff's car and shrug her shoulders. Doc. #56, PAGEID#515. Thomas made no attempt either to speak to or stop Plaintiff after she exited the store. Doc. #71-1, PAGEID#1524. Plaintiff had a sip of her Sprite, started up her car and left the parking lot. *Id.*

Plaintiff, who was returning to her home via Route 35, slowed down for a light at Trebein Road and noticed that she was being followed by a Sheriff's car. Doc. #71-1, PAGEID#1525. Thomas, who was in the Sheriff's car, stopped Plaintiff and got out of his car. He told her she was going slow, had an open trunk and that she had used turn signals when exiting the parking space at the convenience store. *Id.* There is no dispute that the trunk of Plaintiff's car was open and "flapping" as she traveled down Route 35. Dkt., April 11, 2018, "Manual Filing of Exhibit 33" (video).

Thomas then asked Plaintiff, several times, if she was under the influence of either alcohol or drugs, which Plaintiff repeatedly denied. Doc. #56, PAGEID##521-22. Plaintiff also told Thomas that she would like to take a drug test and wanted to call her husband, attorney George Katchmer. Doc. #71-1, PAGEID##1525 and 1531. Kessel arrived at the scene and gave Thomas a sealed box for the urine test. He wanted Plaintiff to sign a yellow paper saying her license was being taken and she was being charged. Doc. #25, PAGEID#119; Doc. #56, PAGEID##528 and 532.

4

Thomas administered a field sobriety test to Plaintiff which, according to the Complaint, caused Kessel to express concern to Thomas that perhaps Plaintiff did not understand. *Id.* Following these tests, which Kessel "assisted with," according to Thomas's narrative supplement referenced in his affidavit, Thomas placed Plaintiff under arrest for suspicion of OVI and transported her to the Greene County, Ohio, Jail. Doc. # 57-1, PAGEID##638 and 711; Doc. #56, PAGEID##526-529.[3]

When Plaintiff arrived at the jail in the car being driven by Thomas, she was in the backseat, handcuffed in the back and barefoot. Doc. #56, PAGEID#530. Plaintiff initially testified in her deposition that upon arriving at the jail she was "dragged" out of the car by Thomas. When asked to explain what she meant when she said Thomas "dragged" her out of the car, Plaintiff testified that "He [Thomas] drug me from my handcuffs off, and because I'm short that thing, the car, was a little high for me so he just got me from my handcuffs from the back and took me." When asked if Thomas "...then kind of led you to the booking room," Plaintiff agreed with that characterization by testifying "Yes, he did." Doc. #56, PAGEID##39-40. Plaintiff later testified in her deposition that Thomas "took me to the jail, and he brought me down, he grabbed me from the handcuffs and got me to the facility. ..." *Id.*, PAGEID#535. Thomas stated in his affidavit that he

---

[3] Thomas's affidavit, Doc. #57-1, PAGEID#637-638, refers only to "a field sobriety test" while the narrative report, Doc. #57-1, PAGEID#711, refers to "field sobriety tests."

"walked" Plaintiff into the booking area. Doc. #57-1, PAGEID#638. In Plaintiff's affidavit attached to her response to Defendants motion for summary judgment, however, she alleges that, Thomas "yanked me across the parking area in the Jai[l] by my handcuffs, I was barefoot and not resisting in any way." At the Jail, Plaintiff voluntarily submitted a urine sample for testing. Doc. #71-1, PAGEID#1526.

Although Plaintiff received her urine sample at the jail, she refused to sign a paper stating that it was hers because the sample was unsigned and unsealed. *Id*. Thomas then allegedly became angry, threw the sample in the trash and ordered Plaintiff to be booked into jail, despite being told by Kessel that she should not be booked because her husband was coming to pick her up. Doc. #71-1, PAGEID##1526-1527. Plaintiff alleges that she was forced to take a cold shower, that Fallis gave her a towel with dirt and feces on it, and that she was then placed in jail clothing, fingerprinted, and photographed. Doc. # 57-1, PAGEID#638; Doc. #71-1, PAGEID#1527. Plaintiff further states that a younger deputy at the Jail told Fallis to check Plaintiff for tattoos. Doc. 71-1, PAGEID#1527. Also in the booking area that morning was a younger white man who, according to Plaintiff, "seemed high," yet was dressed in street clothing, had his wallet and was waiting to be picked up. *Id*. Plaintiff was released from jail when her husband arrived to pick her up at approximately 4:00 a.m.

On September 9, 2015, Plaintiff attended a follow-up mediation in an attempt to resolve an EEOC complaint that she had filed against the Greene

6

County Department of Children's Services ("Children's Services") where she had worked before she was terminated in March of 2015.[4] Huddleson represented Children's Services at both mediations. The first mediation, held July 28, 2015, was recessed so he could conduct an investigation into complaints of discrimination that Plaintiff had allegedly made to her supervisors before she was terminated.[5] At the September 9, 2015, mediation, Plaintiff stated that Huddleson had in his possession a copy of her August 9, 2015, arrest report from the Sherriff's Department, that he was trying to intimidate her with the report, and that his attitude had changed since the last mediation in that he no longer wanted to settle her claim. Doc. #71-1, PAGEID#1528; Doc. #56, PAGEID#77.

Plaintiff, who hired an attorney for her criminal case, had been arraigned on August 10, 2015, in Fairborn Municipal Court. Discovery was requested in the municipal court case and, according to the Complaint, Defendant Combs provided an "unresponsive video" Doc. #25, PAGEID#123, and Defendant Tavner approved Thomas's report. Doc. #57, PAGEID#711; Doc. #25, PAGEID#123. Plaintiff's urine sample, which was retrieved from the trash can and tested, was negative for

---

[4] Plaintiff's employment claim is currently the subject of a separately filed lawsuit, *Prado v Mazeika*, et al., Case No. 3:16-cv-00320, United States District Court for the Southern District of Ohio.

[5] One of Plaintiff's supervisors at Children's Services, Beth Keller, was named as a defendant in Plaintiff's wrongful termination case, Case No. 3:16-cv-00320, *Prado v. Mazeika*. Major Kirk Keller, a Defendant herein, is the husband of Beth Keller. According to the Complaint, he is the "officer supervising the jail and the road patrol in Greene County." Doc. #25, PAGEID#125.

alcohol and drugs. Doc. #71-1, PAGEID#1528. The criminal case was dismissed on October 11, 2015. *Id.* at PAGEID##61and 62; Doc. #25, PAGEID#123.

## II. Summary Judgment Standard

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.v. Catrett*, 477 U.S. 317, 322 (1986). The moving party always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323; *see also Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991).

"Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1245 (6th Cir. 1995); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support

of its position. *Celotex*, 477 U.S. at 324. "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." *Michigan Prot. & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir. 1994).

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine dispute of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Id.* at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe. Credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, *Federal Practice and Procedure* Civil 3d § 2726 (1998).

In determining whether a genuine dispute of material fact exists, a court need only consider the materials cited by the parties. Fed. R. Civ. P. 56(c)(3). "A district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990). If it so chooses, however, the Court may also consider other materials in the record. Fed. R. Civ. P. 56(c)(3).

### III. Legal Analysis

### A. First Cause of Action – Denial of Equal Protection

Plaintiff's first cause of action contends that her arrest and detention on August 9, 2015, violated the Equal Protection Clause, as set forth in the Fourteenth Amendment to the United States Constitution. In order to prove an Equal Protection violation, however, Plaintiff must prove that Defendants intentionally discriminated against her due to her membership in a protected class. *Henry v. Metro. Sewer Dist.*, 922 F.2d 332, 341 (6th Cir.1990). Additionally, and importantly, Plaintiff must also establish that she was treated 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Ctr. for Bio–Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir.2011). As will be seen below, Plaintiff has failed to establish any genuine dispute as to any material fact that Defendants engaged in intentional discrimination, that she was treated disparately compared to similarly situated persons and that the alleged disparate treatment burdened a fundamental right, targeted a suspected class or had no rational basis.

Plaintiff has failed to establish a genuine dispute of any material fact that Defendants engaged in intentional discrimination against her. The evidence before this Court includes, in addition to a videotape of the stop and arrest and numerous attachments, the affidavit of Plaintiff (Doc. #71-1), Plaintiff's deposition

10

(Doc. #55), affidavits of Thomas (Doc. #57-1) and Fallis (Doc. #57-2). Defendants, through the affidavits of Thomas and Fallis, have stated that Plaintiff was arrested and booked into the Greene County Jail without regard to her race, ethnicity or gender. Doc. #57-1, PAGEID#638; Doc. #57-2, PAGEID#718. Specifically, Thomas states that Plaintiff was stopped solely because her car trunk was open and she was driving below the posted speed limit. Doc. #57-1, PAGEID#637. According to Thomas's testimony, Plaintiff was then arrested on suspicion of OVI because her eyes were bloodshot and her performance on the field sobriety test was in question, since it included swaying, instability on her feet, using her arms for balance, making incorrect turns and taking an incorrect number of steps. Doc. #57-1, PAGEID##637 and 638. Plaintiff's response, as stated in her deposition and affidavit, does not dispute Thomas's testimony that Plaintiff's trunk was open and that she was driving under the speed limit at the time he stopped her. Doc. #71-1; PAGEID#1525. Plaintiff likewise admits in her deposition that at 2:00 a.m. her eyes were bloodshot. Doc. #56, PAGEID#533. The Court has also reviewed the videotape of her stop which includes the field sobriety test administered by Thomas to Plaintiff at the time of the stop. Exhibit 33, filed April 11, 2018. Fallis states in her affidavit that Plaintiff was searched for potential weapons and contraband at the Greene County Jail, including any that might be in her hair, and that this search was in accordance with the General Order of the Greene County Sheriff's Office, General Order 1.2.4 (II)(D)(1). Doc. #57-2, PAGEID#717. Plaintiff testified that she was told by Fallis that she was checking Plaintiff's hair for

needles to be certain there were no weapons. Plaintiff also admitted that she has no knowledge of what the standard procedures are for booking individuals into the Greene County Jail. Doc. #56, PAGEID##539 and 540.

Despite the arguments made in her Response, Plaintiff has not provided the Court with either circumstantial or direct evidence that her arrest and booking into the Greene County Jail were motivated by Defendants' animus due to her race, ethnicity or gender. Thomas had probable cause for following and stopping Plaintiff based on the trunk of her car being open and her driving at a slow speed. Additionally, although the results of her urine test ultimately proved that Plaintiff was not under the influence of alcohol or drugs, Thomas stated an opinion, based on his education, training and experience, that Plaintiff did not pass the field sobriety test, which established a factual basis for her arrest on suspicion of OVI as opposed to Plaintiff's race, ethnicity or gender. Doc. #57-1, PAGEID#638. For whatever reason, Plaintiff has not provided this Court with any expert affidavit or deposition testimony that challenges Thomas's opinion. As a result, Plaintiff has failed to provide this Court with any genuine dispute of material fact that Plaintiff's arrest for suspicion of OVI was due to intentional discrimination. Similarly, Plaintiff provided this Court with no facts to raise a genuine dispute of any material fact that Plaintiff was not processed in accordance with the standard procedures employed by the Greene County Jail (General Order 1.2.5 (E)(1), or that Plaintiff was somehow treated any differently than anyone else during the intake process. *Id.* at PAGEID#712.

Additionally, and importantly, Plaintiff herself testified under oath that she believed she was arrested by Thomas and later booked into the Greene County Jail for reasons of "retaliation," presumably because she had filed an EEOC claim. Doc. #56, PAGEID##582 and 583. Plaintiff made no mention of being arrested and booked into the Greene County Jail due to her race, ethnicity or gender.[6]

Plaintiff does, however, argue in her Response that her rights under the Equal Protection Clause were violated and disparate treatment occurred because similarly situated individuals of a different race, ethnicity and gender were not prosecuted as she was. Plaintiff states in her Response that she was "targeted" by Thomas at the convenience store because of her "membership in a suspect class." Doc. #70, PAGEID##1495 and 1499. In order to support this allegation, however, Plaintiff must present evidence that the challenged law enforcement practice not only had a "discriminatory effect" and "was motivated by a discriminatory purpose," *Farm Labor Org. Comm. v. Ohio State Highway Patrol*, 308 F.3d 523, 533-34 (6th Cir.2002), but that similarly situated individuals were not investigated. The discriminatory effect of such alleged disparate treatment must be demonstrated by naming or using statistical or other evidence which

_____

[6] It should be noted that Plaintiff has provided the Court with no evidence to support her opinion that the arrest and booking were retaliatory. Specifically, there is no evidence that Thomas either arrested or had Plaintiff booked into the Jail due to her filing an EEOC charge against the Greene County Department of Job and Family Services, Children's Services Division, following her termination on March 10, 2015, as a probationary employee caseworker.

"address[es] the crucial question of whether one class is being treated differently from another class that is otherwise similarly situated." *Id.* "It is an absolute requirement that the plaintiff make at least a *prima facie* showing that similarly situated persons outside her category were not prosecuted." *Gardenhire v. Schubert*, 205 F.3d 303, 319 (6th Cir. 2000).

In *Gardenhire*, a business owner and her husband, an interracial couple, sued a police chief under § 1983, alleging that they were arrested without probable cause, in violation of the Fourth Amendment, and that the police chief violated equal protection by arresting them instead of pursuing a theft investigation against the neighboring store owner. Although the Sixth Circuit held that fact questions existed as to whether plaintiffs were in fact arrested and whether the police chief had probable cause to arrest, thus precluding summary judgment on their Fourth Amendment claim on qualified immunity grounds, the Court did hold that the plaintiffs failed to support a claim of selective enforcement based on their status as an interracial couple and reiterated the legal standard that must be met in such claims.

> First, an official must single out a person belonging to an identifiable group, such as those of a particular race or religion, or a group exercising constitutional rights, for prosecution even though he has decided not to prosecute persons not belonging to that group in similar situations. Second, the official must initiate the prosecution with a discriminatory purpose. Finally, the prosecution must have a discriminatory effect on the group which the defendant belongs to.

*Gardenhire*, 205 F.3d at 319, quoting *United States v. Anderson*, 923 F.2d 450, 453 (6th Cir.1991).

In affirming a grant of summary judgment against plaintiffs on their selective enforcement claim, the Sixth Circuit found that the plaintiffs failed to present evidence that the neighboring store owner was similarly situated to them, that the police chief purposefully discriminated against them because they were an interracial couple and, finally, failed to present "'clear evidence' of misbehavior sufficient to sustain their selective enforcement claim to overcome the presumption that the state actors have properly discharged their official duties." *Id.* at 320.

Like the plaintiffs in *Gardenhire*, Plaintiff herein has also failed to establish any genuine dispute of any material fact that precludes summary judgment being entered against her. With respect to the first prong of the selective enforcement test, which requires a *prima facie* showing that similarly situated persons outside her category were not prosecuted, Plaintiff presents no facts and instead simply speculates. Although Plaintiff claims that while she was illegally "followed" from the convenience store by Thomas and the white male in his mid-thirties was not, Plaintiff fails to offer any information as to whether the white male left the convenience store on foot, was a passenger in another vehicle or got in his car and drove away with his trunk open and "flapping" like Plaintiff's car.[7] Plaintiff

---

[7] Plaintiff cannot dispute that there was probable cause for being stopped by Thomas, since the video, Exhibit 33, clearly shows that the trunk of her car was open and "flapping" as she drove down State Route 35 at 1:30 a.m. on August 9, 2015.

also argues that she was subjected to "obviously ethnically derogatory racial and ethnic comments" at the Greene County Jail and should never have been booked into the Jail, since a young white male in the booking area "in street clothing" and who had allegedly been "arrested for drugs" and "seemed high" was apparently not booked but, instead, was "waiting to be picked up."  However, there are no further details in Plaintiff's affidavit or in any other evidence presented by Plaintiff as to the circumstances of this white male's arrest or how long he had been in street clothing. [8]

"In determining whether individuals are 'similarly situated,' a court should 'not demand exact correlation, but should instead seek relevant similarity.'" *Bench Billboard v. City of Cincinnati*, 675 F.3d 974, 987 (6th Cir.2012) (quoting *Perry v. McGinnis*, 209 F.3d 597, 601(6th Cir.2000) (citation omitted)) as cited in *Loesel v. City of Frankenmuth*, 692 F.2d 452 (6th Cir. 452). In short, Plaintiff has failed to provide enough information to establish "relative similarity" to meet the first prong of the selective enforcement test and cannot "avoid summary judgment by resorting to 'speculation, conjecture, or fantasy.' " *K.V.G. Properties, Inc. v. Westfield Insurance Company*, 900 F.3d 818, 823 (6th Cir. 2018) (coverage denied since *prima face* case of criminal act proved by insurer and summary judgment granted where insured's argument of possible compliance with the

---

[8] Plaintiff's allegations that she was subjected to "obviously ethnically derogatory racial and ethnic comments" at the Greene County Jail seem to consist only of a reference that she should be checked for tattoos.

Michigan Medical Marihuana Act was speculative), citing *Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004); see also *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252-53 (1986) (requiring more than a "scintilla" of evidence).

Nor does Plaintiff offer any evidence to prove the second prong of selective enforcement, that the prosecution was done "with a discriminatory purpose in mind," or the third prong, that the prosecution had a "discriminatory effect upon the group to which she belongs." *Gardenhire*, 205 F.3d at 319. For example, in *Farm Labor Organizing Committee v. Ohio State Highway Patrol,* 308 F.3d at 533-34, discriminatory purpose was established where state troopers testified in depositions that they would call the Border Patrol if they believed a motorist or passengers were Hispanic but would not call if they were white. While determining whether official action was motivated by intentional discrimination "demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available," *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977), there must be some material facts actually in dispute.

Because Plaintiff has failed to establish any genuine dispute of any material fact that she was intentionally discriminated against due to her membership in a protected class, was treated disparately as compared to similarly situated persons and that such treatment either burdened a fundamental right, targeted a suspect class, or had no rational basis, Defendants' motion for summary judgment on Plaintiff's denial of the protection of the Equal Protection Clause is sustained.

## B. Second Cause of Action – Denial of Due Process Clause

Plaintiff's Second Cause of Action is for violations of the Due Process Clause of the Fourteenth Amendment. Her Complaint alleges two separate instances: her arrest and the subsequent booking which resulted in the posting of her photograph online as an inmate of the Greene County Jail. Doc. #25, PAGEID#125. Although the Complaint does not state if the alleged violations are procedural or substantive, Plaintiff's response to Defendants' motion for summary judgment argues that both her arrest and "posting of her mugshot" are procedural due process claims. Doc. #70, PAGEID#1505. Plaintiff's response also asserts that both procedural and substantive due process violations exist, due to Thomas's treatment of her at the Greene County Jail when she was "dragged barefoot by her handcuffs," "threatened with a search for gang tattoos," and when Fallis' and "other unnamed officers" "enabled and condoned" the throwing of her urine sample in the trash. *Id.* at 1503. Finally, Plaintiff asserts that her due process rights were violated when Huddleson brought her September 9, 2015, arrest report to the mediation, despite the fact that the report was never seen by the mediator. Plaintiff does not specify if this incident constitutes a procedural or substantive due process violation.

A procedural due process claim is rooted in ". . . the fundamental requirement that an individual be given the opportunity to be heard in a meaningful way." *Loudermill v. Cleveland Bd. of Ed.* 721 F.2d 550, 563 (1983) aff'd,

18

470 U.S. 532 (1985) (as cited in *Howard v. Grinage,* 82 F.3d 1343, 1349 (6th Cir.1996)). In general, a plaintiff must show that (1) [she] had a life, liberty, or property interest protected by the Due Process Clause; (2) [she] was deprived of this protected interest; and (3) the state did not afford [her] adequate procedural rights." *Daily Servs., LLC v. Valentino*, 756 F.3d 893, 904 (6th Cir. 2014). Substantive due process claims generally arise under one of "two categories: (1) deprivations of a particular constitutional guarantee; and (2) actions that shock the conscience." *EJS Properties, LLC v. City of Toledo*, 698 F.3d 845, 861 (6th Cir. 2012) (quoting *Valot v. S.E. Local Sch. Dist. Bd. of Educ.*, 107 F.3d 1220,1228 (6th Cir. 1997)). However, "[s]ubstantive-due-process challenges usually do not survive if a provision of the Constitution directly addresses the allegedly illegal conduct at issue." *Smith v. Jefferson Cty. Bd.,* 641 F.3d 197, 217 (6th Cir. 2011) (citing *Montgomery v. Carter Cty.*, 226 F.3d 758, 769 (6th Cir. 2000).

For the reasons set forth below, Plaintiff has failed to establish a genuine dispute of any material fact that would preclude summary judgment in Defendants favor on her second cause of action.


### 1. Plaintiff's Arrest

Plaintiff argues that "[I]n disputes over wrongful arrest, the existence of probable cause 'presents a jury question, unless there is only one reasonable determination possible.' *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir.2002) (citation omitted), cert denied, 537 U.S. 1191 (2003)." Doc. #70 PAGEID#1501

(citation omitted). Plaintiff then states that the "trier of fact" should decide whether Plaintiff's arrest was justified and that "[she] has provided sufficient facts and evidence to have her procedural due process claim concerning her arrest presented to a trier of fact." Doc. #70 PAGEID#1502. Based on the evidence submitted by the parties in connection with Defendants' motion for summary judgment, the Court disagrees.

Plaintiff's procedural due process claim for her arrest is based on the allegation that her August 9, 2015, arrest was without probable cause.

> Under federal law, '[p]robable cause is a 'practical, nontechnical conception' that deals with probabilities, not certainties and the 'factual and practical considerations of everyday life.' *Manley v. Paramount's Kings Island*, 299 Fed.Appx. 524, 528 (6th Cir. 2008) (quoting *Illinois v. Gates*, 462 U.S. 213, 231, (1983)). ''Police have probable cause to arrest a person when they have 'reasonably trustworthy information that is sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense based on the facts and circumstances within the police's knowledge at the moment in question.'" *Id.* (quoting *Peet v. City of Detroit*, 502 F.3d 557, 563–64 (6th Cir. 2007)).

*Zavatson v. City of Warren, Michigan*, 714 Fed.Appx. 512, 520 (6th Cir. 2017).

As stated earlier in this Decision and Entry, there is no dispute that, at the time of the stop, Plaintiff was driving significantly below the posted speed limit, her trunk was open, her eyes were bloodshot and that she ultimately consented to the field sobriety test. Doc. #56, PAGEID## 521, 532, 533. Although Plaintiff argues that the test was not properly administered, other than this argument in her

Response, she has produced no evidence to challenge the opinion of Thomas who clearly opined that the test was properly administered and that she was arrested for suspicion of OVI. Moreover, the video of the stop and ultimate arrest shows that Plaintiff was argumentative, which, while understandable given the difficult circumstances which existed at that time, nevertheless added to Thomas's reasonable belief, "at that moment" that the arrest was justified. Doc. #59, filed manually. In short, dealing with "probabilities, not certainties" and ...."based on the facts and circumstances within the police's knowledge at the moment," there was sufficient "reasonably trustworthy information" . . . "to warrant a prudent man in believing" that sufficient probable cause existed to arrest Plaintiff for suspicion of OVI. *Zavatson* 714 Fed. Appx. at 520.

Based on the affidavits before this Court, along with the video and Plaintiff's own deposition testimony, Plaintiff has failed to provide this Court with any genuine dispute of any material fact that her procedural due process rights were violated when she was arrested on August 9, 2015.

### 2. Plaintiff's Mug Shot

Plaintiff next argues that, ever since the posting of her mug shot, she has been unable to obtain employment and is stopped and subjected to a quarantine and criminal interrogation every time she re-enters the United States. Although notice and an opportunity to be heard must be afforded if the government does something that adversely affects a person's good name, reputation, honor, or

integrity, "[S]ome alteration of a right or status 'previously recognized by state law,' such as employment, must accompany the damage to reputation." *Quinn v. Shirey*, 293 F.3d 315, 319 (6th Cir. 2002) (quoting *Paul v. Davis*, 424 U.S. 693, 711-12, (1976)). Plaintiff's own deposition testimony, however, refutes any argument that she has set forth a genuine dispute of any material fact that she has actually suffered such damage and, accordingly, no claim of any loss of liberty without due process of law exists.

Plaintiff has testified that while she has applied for jobs, no one has indicated to her that they were not offering her any employment because of her August 9, 2015, arrest. Moreover, she never answered any question about her arrest during the process of applying for any job. Doc. #56, PAGEID##569-71. Plaintiff's argument that her ability to travel has been adversely affected by the arrest and mugshot is also directly contradicted by her deposition testimony. Plaintiff stated in her deposition that she has never been told or given any information that would reasonably support her argument that her luggage has been searched by customs or that she has been detained due to the arrest and posting of her mug shot. Additionally, Plaintiff admitted that she has been able to travel in and out of the country. Doc. #56, PAGEID##565, 567, 568. Based on Plaintiff's own deposition testimony, there is no genuine dispute of any material fact that a due process violation exists for the arrest and posting of her mugshot following her August 9, 2015, arrest.

### 3. Removal of Plaintiff by Thomas from the Police Car at the Greene County Jail, Discarding of Plaintiff's Urine Sample and Mediation

The remainder of Plaintiff's alleged due process violations relate to three incidents, two of which occurred at the Greene County Jail immediately following the morning of her August 9, 2015, arrest and the third in September of 2015, by Huddleson at a second EEOC mediation. The Court will briefly review the evidence presented for each of these three incidents, assuming as true the evidence of the non-moving party, and drawing all reasonable inferences in favor of her. *Anderson*, 477 U.S. at 255.

#### a. Removal of Plaintiff from the Police Car at the Greene County Jail

Plaintiff's Amended Complaint alleges that following her arrest, "...Thomas dragged her [Plaintiff] barefoot by the handcuffs into the jail" Doc. #25, PAGEID#120. In her response to Defendants' summary judgment, Plaintiff repeats the allegations that she "was dragged barefoot by her handcuffs" across the entrance bay or garage port to the Jail. Doc. #70, PAGEID##1491,1498 and 1503. Plaintiff's sworn deposition testimony, however, contradicts this allegation.

Plaintiff testified in her deposition that she was transported to the Greene County Jail by Thomas and was seated in the backseat of the car, handcuffed from behind, and barefoot. Plaintiff initially testified in her deposition that Thomas "dragged me out of the car."

Q.     So when you arrived at the Greene County Jail Deputy
       Thomas took you out of the car and took you to the booking
       room, correct?

A.     Well, he took me out. He dragged me out of the
       car and barefoot took me to inside the -- to the place
       to -- to -- to a place where there was a woman officer

Doc. #56, PAGEID##535 and 536

Plaintiff was then asked to explain what she meant by saying that Thomas

"dragged" her out of the car.

Q.     When you say he dragged you out the car can you
       explain to me?

A.     Yes. He drug me like this. He drug me from my
       handcuffs off, and because I'm short that thing, the car,
       was a little high for me so he just got me from my
       handcuffs from the back and took me.

Q.     Okay. And then kind of led you to the booking
       room?

A.     Yes, he did.

Q.     And then at that point did he turn you over to
       the female officer?

A.     He was with her. He told her to book me in.

*Id.*, PAGEID#536

At another point in her deposition, Plaintiff described her removal from

Thomas's car consistent with the above testimony by testifying that "Thomas took

me to the jail, and he brought me down, he grabbed me from [by] the handcuffs

and got me to the facility, whatever they put the people [in]." Doc. #56, PAGEID#

535.

Thomas's affidavit simply states that he "...transported Ms. Prado to the Greene County Jail and walked her into the booking area." Doc. 57-1, PAGEID#638.

Notwithstanding her prior deposition testimony stating that she was "drug" out of the car and "led" to the booking station, Plaintiff submitted an affidavit in response to the motion for summary judgement that directly contradicted this earlier testimony. Plaintiff 's post-deposition affidavit stated not that Thomas "drug" her out of the backseat of the car by her handcuffs, which were behind her, and then "led" her to the booking area but that Thomas "yanked me across the parking area in the Jai[l] by my handcuffs,[.] I was barefoot and not resisting in any way." Doc. 71-1, PAGEID#1526. Despite this new testimony that Plaintiff was barefoot and "yanked across the parking area," by Thomas, there is no evidence before the Court that Plaintiff complained of any physical injuries or sought any medical treatment for this alleged incident.[9]

Plaintiff argues, incorrectly, that being removed from Thomas's car in this way is a violation of her constitutional rights under the due process clause of the Fourteenth Amendment. Excessive force claims can be resolved under the Fourth, Eighth or Fourteenth Amendments, depending on the plaintiff's status at the time of the incident. *Coley v. Lucas*, 799 F.3d 530, 537 (6th Cir. 2015) (Fourth

---

[9] Although Plaintiff has argued that as a result of the arrest her blood pressure increased and that the "stress" of this incident also resulted in her having gallbladder surgery, there is no medical testimony in support of either of these allegations or that the allegations directly and proximately caused these medical conditions.

Amendment protections apply through police booking until the completion of a probable cause hearing; qualified immunity in excessive force case denied). At the time this incident occurred, Plaintiff was under arrest and had not yet been booked into the Jail. Accordingly, it must be analyzed under the Fourth Amendment and not under the due process clause of the Fourteenth Amendment.

> If the plaintiff was a free person at the time of the incident and the use of force occurred in the course of an arrest or other seizure of the plaintiff, the plaintiff's claim arises under the Fourth Amendment and its reasonableness standard. *Graham v. Connor*, 490 U.S. 395 (1989). That standard requires that the officer's use of force be objectively reasonable, balancing the cost to the individual against the government's interests in effecting the seizure. *Id.* at 396. This standard contains a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case. *Id.*; *Saucier v. Katz*, 533 U. S. 194 (2001).

*Phelps v. Coy*, 286 F.3d 295 (6th Cir. 2002). In *Phelps*, the Sixth Circuit affirmed both the district court's application of the protections of the Fourth Amendment to an arrestee during booking, as well as the district court's ultimate denial of the defendant's motion for summary judgment in a § 1983 excessive force case which included striking arrestee's face and slamming his head into the floor after the arrestee had been subdued. *See, also*, *Ondo v. City of Cleveland*, 795 F.3d 597 (6th Cir. 2015) (summary judgment in §1983 action alleging excessive force in violation of Fourth Amendment, violation of Equal Protection Clause, and intentional infliction of emotional distress under Ohio law affirmed in favor of city, police officers, and corrections' officers).

However, before any analysis of Plaintiff's alleged Fourth Amendment violation can occur, the Court must first review all the evidence in support of this alleged excessive force claim. Plaintiff's deposition testimony, as cited above, does not support a claim for excessive force. In fact, the only evidence before the Court that arguably supports a claim of excessive force is Plaintiff's post-deposition affidavit which, as stated, contradicts her prior deposition testimony. Without this affidavit, Plaintiff has made no factual assertions establishing a claim for excessive force.[10]

"It is undeniably established in the Sixth Circuit, as elsewhere, that a party may not create a genuine issue of material fact sufficient to defeat summary judgment by filing an affidavit in which [she] contradicts a statement he made in a deposition." *Smith v Consolidated Rail*, 91 F.3d144 (6th Cir. 1996) (district court properly excluded affidavit of plaintiff in FELA case that directly contradicted prior deposition testimony). *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453 (6th Cir.1986)

---

[10] Even assuming excessive force is established, without proof of compensatory damages, a plaintiff has only a technical violation and a claim for nominal damages. While still a "prevailing party" under 42 U.S.C. § 1988, an award of nominal damages also highlights the plaintiff's failure to prove an actual compensable injury. *Farrar v. Hobby*, 506 U.S. 103, 115 (1992) (court should consider extent of recovery in fixing reasonable attorney fee; no right to attorney fees for award of nominal damages of one dollar on a $17 million compensatory claim). *See, Carey v. Piphus*, 435 U.S. 247, 254 (1978) (due process violation did not justify substantial nonpunitive damages for students without actual injury proven). "When a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, see *Carey, supra*, at 256–257, the only reasonable fee is usually no fee at all." *Id.* See, *Glowacki v. Howell Public School Dist.*, 566 Fed.Appx. 451 (6th Cir. 2014) (attorney fees not warranted in student's successful First Amendment claim against teacher since nothing gained from declaratory judgment other than moral satisfaction of favorable statement of the law).

(district court refused to deny summary judgment on basis of an affidavit from a terminated employee that contradicted an answer in a deposition). "A directly contradictory affidavit should be stricken unless the party opposing summary judgment provides a persuasive justification for the contradiction." *Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 908 (6th Cir.2006).

In *Aerel*, the Court of Appeals held that the district court improperly struck portions of a post-deposition affidavit submitted at the summary judgment stage, since the testimony "admittedly did not directly contradict his [the affiant's] deposition testimony, but rather revealed information that was not fully explored during that testimony." *Id.* at 909. While affirming the holding that "a party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts her earlier deposition testimony" *Reid,* 790 F.2d at 460, the Sixth Circuit also explained how to determine the admissibility of a post-deposition affidavit at the summary judgment stage.

> A directly contradictory affidavit should be stricken unless the party opposing summary judgment provides a persuasive justification for the contradiction. (citations omitted). If, on the other hand, there is no direct contradiction, then the district court should not strike or disregard that affidavit unless the court determines that the affidavit 'constitutes an attempt to create a sham fact issue.' (quoting *Franks v. Nimmo,* 796 F.2d 1230, 1237 (10th Cir. 1986)).

*Aerel*, 448 F.3d at 908.

A "sham fact issue" is analyzed using a "non-exhaustive list of factors" from *Franks v. Nimmo*, 796 F.2d at 1237, including "whether the affiant was cross-examined during his earlier testimony, whether the affiant had access to the

pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion [that] the affidavit attempts to explain." *Id.* at 908–09 (quoting *Franks*, 796 F.2d at 1237). *See*, *Bush v. Compass Group, USA, Inc.*, 683 Fed. Appx. 440 (6th Cir. 2017)

In this case, Plaintiff's post-deposition affidavit may be viewed as "directly contradicting" her earlier sworn testimony and can be stricken by this Court since Plaintiff has not provided a "persuasive justification" for this change in testimony.[11] Alternatively, utilizing the non-exhaustive list of factors from *Franks*, 796 F.2d at 1237, Plaintiff's post-deposition affidavit, as it pertains to the claim that she was "yanked across the parking area," may be disregarded as a "sham fact issue." Specifically, Plaintiff was cross-examined during her deposition on how she left Thomas's car and was taken to the booking area, Plaintiff clearly had access to the "pertinent evidence" at the time of her deposition testimony and there was no indication of any "newly discovered evidence" that caused Plaintiff to change her testimony. Finally, at no time did Plaintiff express confusion when asked questions concerning her removal from Thomas's car and, in fact,

---

[11] Although Defendants did not move to strike the paragraph from Plaintiff's Affidavit concerning her removal from Thomas's car, "...district courts generally have broad discretion regarding evidentiary rulings. District courts are even empowered to exclude evidence *sua sponte*. *Ondo v City of Cleveland*, 795 F.3d 597,604 (6th Cir. 2015), citing *HDM Flugservice GmbH v. Parker Hannifin Corp.*, 332 F.3d 1025, 1034 (6th Cir.2003) (district court's sua sponte exclusion of evidence in deciding summary judgment motion in favor of manufacturer affirmed on appeal).

responded in her deposition on at least two occasions that she was not "yanked" or "drug" barefoot across the parking area to the booking room. [12]

While an affidavit may be properly considered to address issues for questions that were not asked in a deposition or to clarify confusing topics, the Affidavit submitted by Plaintiff addressing her removal from Thomas's car was not submitted for purposes of clarification but, instead, to contradict prior sworn testimony and/or to create a sham fact issue. For this reason, this Court will disregard paragraph 25, Doc. 71-1, PAGEID#1526, of Plaintiff's affidavit.

Plaintiff has established no genuine dispute of any material fact. Thus, Defendants are entitled to judgment as a matter of law on Plaintiff's claim of alleged excessive force.

### b. Discarding of Plaintiff's Urine Sample and Mediation

Plaintiff has also alleged that her due process rights were violated by Defendants because they discarded her urine sample and because Defendants took her arrest record of August 9, 2015, to the EEOC mediation. For the reasons which follow, Defendants' motion for summary judgment on these issues should be sustained.

---

[12] Plaintiff's deposition testimony, that she was "drug" from the back seat of Thomas's car by her handcuffs does not constitute excessive force. "[N]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," *Graham*, 490 U.S. at 396, violates the Fourth Amendment.

The gist of Plaintiff's claim is that, once at the Jail, Thomas threw Plaintiff's urine sample and driver's license in the trash can because she would not initial an unsealed urine sample. However, it is undisputed that Plaintiff's failure to sign the form was later determined not to constitute a refusal to submit to a test and the sample was retrieved, tested, and ultimately found to be negative for alcohol or drugs. Doc. #57-1, PAGEID#638; Doc. #71-1, PAGEID#1526. Thereafter, Plaintiff's license was also returned and the case against Plaintiff was then dismissed.

With respect to the mediation, Plaintiff alleges that Huddleson took Plaintiff's August 9, 2015, arrest report to the second EEOC mediation, held in September 2015, in an effort to intimidate her and that her EEOC claim did not settle at that mediation because Huddleson had brought the report with him. Plaintiff testified in her deposition, however, that the mediator never reviewed the arrest report. Doc. #56, PAGEID#573.

Concerning the discarding of her urine sample and the unsuccessful September EEOC mediation, Plaintiff alleges that these two incidents are violations of her constitutional rights under the due process clause. However, there are no facts or case law in support of this argument. Plaintiff was not *deprived* of any life, liberty or property interest, which is required to establish a procedural due process violation, and neither of these two incidents "shocked the conscience," which is necessary to support a substantive due process violation. See, *Range v. Douglas*, 763 F.3d 573 (6th 2014) (failure to terminate employee prior to discovery of sexual abuse by county employee of corpses did not "shock

31

conscience"). Based on the foregoing, Plaintiff has established no genuine dispute of any material fact and Defendants are entitled to judgment as a matter of law for Plaintiff's due process claims concerning the discarding of her urine sample and the unsuccessful EEOC mediation.

### C. Third Cause of Action - Conspiracy for Deprivation of Constitutional Rights of Equal Protection and Due Process

Plaintiff's Third Cause of Action, conspiracy to deprive Plaintiff of her constitutional rights of equal protection and due process, is premised on Plaintiff's theory that her August 9, 2015, arrest was somehow related and timed to adversely impact her alleged right to a settlement of her EEOC claim for wrongful termination from Greene County Children's Services. Doc. #70, PAGEID##1506-1507. A prior mediation had been held July 28, 2015, with a follow-up scheduled for September 9, 2015. Plaintiff, however, has provided this Court with nothing more than speculation of the possible existence of a conspiracy. Accordingly, summary judgment in favor of Defendants on this cause of action is appropriate.

Although there is no reference to it in the Complaint, Plaintiff's claim for conspiracy is presumably pled pursuant to 42 U.S.C. § 1985. A claim for conspiracy requires evidence of the existence of a single plan, that the conspirators shared a conspiratorial objective to deprive her of her constitutional rights and that an overt act was committed in furtherance of the conspiracy. *Robertson v. Lucas*, 753 F.3d. 606, 622 (6th Cir. 2014) (summary judgment affirmed in favor of state and

federal law enforcement officers, city and county, under conspiracy claim since no specific evidence of a single plan, common objective or that any constitutional rights were violated). Doc. #57, PAGEID#628.

Plaintiff has failed to create any genuine dispute of <u>any</u> material fact, that there was a plan or agreement between or among any Defendants to deprive her of her constitutional rights. Instead Plaintiff has offered only conspiratorial theories involving Huddleson and Keller and conjecture that they intended to use Plaintiff's arrest records at the EEOC mediation to their advantage. However, even if Plaintiff's conspiracy theories are correct, Plaintiff testified that, although Huddleson took her arrest records to the September 9, 2015, mediation, the mediator never took the arrest records from Huddleson and Plaintiff still ultimately obtained a right to sue letter from the EEOC. Doc. #56, PAGEID#589. Accordingly, even assuming there was plan to deprive Plaintiff of her constitutional rights, Plaintiff has sustained no injury.

Plaintiff makes a similar contention concerning her August 9, 2015, arrest, arguing, again without any facts, that following the stop of Plaintiff, who was driving on Route 35 at 1:30 a.m. with an open trunk, Thomas was in contact with Keller who, in turn, was in contact with his wife, Beth Keller, a defendant in Plaintiff's EEOC claim and that Plaintiff was therefore illegally arrested. Given that "[i]t is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient," no cause of action for conspiracy to deprive Plaintiff of

33

her Equal Protection and Due Process rights exists. *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir.1987) (affirming grant of summary judgment where the allegations lacked the requisite material facts and specificity necessary to sustain a conspiracy claim). In this matter, Plaintiff's conspiracy claims lack specificity and contain nothing but an abundance of vague and conclusory allegations, unsupported by a genuine dispute of any <u>material</u> facts. "[T]rials exist to resolve concrete factual disputes, not to satiate the endless imagination of trial lawyers" *K.V.G. Properties, Inc.* 900 F.3d at 833. As such, summary judgment in favor of Defendants on Plaintiff's third cause of action is sustained.

### D. Fourth Cause of Action – Failure to Train and Supervise

Plaintiff's final cause of action, failure to train and supervise, lists a number of incidents that occurred to her following the stop on August 9, 2015. These incidents include alleged "irregularities" in her arrest and booking, requests by her for "tapes" that were initially ignored, and conclude with the failed September 9, 2015, mediation. Doc. #25, PAGEID##128-129. Although not specifically stated, this fourth cause of action appears to be against Huddleson and Keller who, according to the Amended Complaint, are being "sued for damages in [their] individual capacity and injunctive and declaratory relief in [their] official capacity" *Id.* at PAGEID##116-117, presumably as policy makers. However, neither Plaintiff's Amended Complaint nor her response to Defendants' motion for summary judgment identifies the specific policy involved.

Municipalities are not . . . liable for every misdeed of their employees and agents. 'Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under §§ 1983.' [*Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694, (1978).] This circuit has stated that to satisfy the *Monell* requirements a plaintiff must 'identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy.' *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir.1987) (adopting the test articulated in *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir.1984) (en banc), cert. denied, 472 U.S. 1016 (1985)).

*Garner v. Memphis Police Dep't*, 8 F.3d 358, 363-64 (6th Cir. 1993).

Rather than identify an actual policy that was in existence and employed by Thomas, Kessel, Fallis, Combs, and/or Tavner, and that resulted in an injury to her, Plaintiff instead only alleges generalities. However, the type of "policy" upon which Plaintiff relies, and ". . . its causal relation to the alleged constitutional violation, are not susceptible to such easy proof. In the first place, the word 'policy' generally implies a course of action consciously chosen from among various alternatives . . ." *City of Oklahoma City v. Tuttle* 471 U.S. 808, 823 (1985) (reversible error to allow the jury to infer a thoroughly nebulous "policy" of "inadequate training" on city's part from a single shooting incident and at the same time sanction inference that the "policy" was the cause of the incident, thereby giving rise to liability under Civil Rights Act of 1861).

Not only does Plaintiff fail to articulate a policy that was employed against her and eventually caused injury to her, Plaintiff also fails to establish that the "active unconstitutional behavior," which she did not identify, was encouraged or

directly participated in by the supervisor(s) in this case, presumably Keller and/or

Huddleson, and caused harm to her.

> Allegations of respondeat superior do not sustain a § 1983
> claim against state employees in their individual capacities, meaning
> that officials are personally liable for damages under that statute
> 'only for their own unconstitutional behavior.' *Leach v. Shelby
> County Sheriff*, 891 F.2d 1241, 1246 (6th Cir.1989). That is, 'even if a
> plaintiff can prove a violation of his constitutional rights, his § 1983
> claim must fail against a supervisory official unless the supervisor
> encouraged the specific incident of misconduct or in some other way
> directly participated in it.'

*Cardinal v. Metrish*, 564 F.3d 794, 802–03 (6th Cir.2009) (citations and
internal quotation marks omitted).

Similarly, Plaintiff has presented no evidence that Keller and/or

Huddleson ever condoned or tacitly approved of any policy or practice that

was used against Plaintiff or caused harm to her in connection with her

arrest, booking, request for tapes and later follow-up mediation on

September 9, 2015. While Plaintiff has surmised that communication must

have occurred between and among Defendants shortly after and following

her arrest and booking, and that Keller and/or Huddleson knew of the

alleged "irregularities" in Plaintiff's arrest and booking and condoned it,

Plaintiff has presented no evidence in support of her claim. Without

evidence in support of her allegations against Keller and Huddleson,

Plaintiff has no claim for any failure to train or supervise. *Thomas v City of

Chattanooga*, 398 F.3d 426 (6th Cir. 2005) (expert summary judgment

affidavit stating an opinion that officer acted pursuant to unwritten

municipal policy condoning use of excessive force was conclusory and summary judgment for municipality in § 1983 action appropriate).

There is also no evidence that either Keller or Huddleson authorized, approved or condoned the allegedly incorrectly administered field sobriety test(s) or any other unconstitutional conduct that Plaintiff claims occurred.

Based on the lack of evidence presented by Plaintiff, there is no genuine dispute of any material fact that precludes summary judgment as to the fourth cause of action.

### E. Qualified Immunity

Defendants have also moved for qualified immunity for all Defendants, Thomas, Kessel, Fallis, Tavner, Combs, Keller and Huddleson, on all of Plaintiff's claims. Qualified immunity protects government officials who perform discretionary functions from civil liability "insofar as their conduct does not violate clearly established [particularized,] statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 577 U.S. 305, 308 (2015). *Harlow v. Fitzgerald*, 457 U.S. 800, 817–18 (1982) (case remanded to district court for reconsideration of whether respondent's pretrial showings were insufficient to withstand officials' motion for summary judgment). As seen in the previous discussion, however, Plaintiff has made no showing that any of her constitutional rights were violated by any Defendant. As such, there is no genuine

dispute of any material fact that any of Plaintiff's constitutional rights, particularized or otherwise, were violated by Defendants.

> A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.' *Reichle v. Howards*, 566 U.S. ——, ——, 132 S.Ct. 2088, 2093, (2012) (internal quotation marks and alteration omitted). 'We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.' *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011). Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'

*Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Once the issue of qualified immunity is raised by a defendant, the plaintiff bears the burden of establishing that the defendant is not entitled to dismissal based on this affirmative defense. *Johnson v. Mosely*, 790 F.3d 649, 653 (6th Cir. 2015) (citing *Reilly v. Vadlamudi*, 680 F. 3d 617, 623 (6th Cir. 2012)). Plaintiff has failed to create a genuine dispute of any material fact that the conduct of any Defendant violated any clearly established statutory or constitutional rights of which a reasonable person would have known. *Mullenix v. Luna,* 577 U.S. at 308.

Thomas is entitled to qualified immunity for all causes of action alleged against him in the First Cause of Action - Deprivation of Constitutional Rights Equal Protection; Second Cause of Action - Deprivation of Constitutional Rights Due Process, excepting Plaintiff's claim for excessive force as previously explained in this Decision and Entry; and Third Cause of Action - Conspiracy for Deprivation of Constitutional Rights Equal Protection and Due Process.

Kessel is entitled to qualified immunity. Although Plaintiff opines that Kessel was present to "enable" Thomas at the time of the stop and in the administration of the field sobriety tests, Plaintiff essentially states nothing more about this Defendant. Given that there was probable cause for both the stop and arrest by Thomas, it is unclear why Kessel was ever named to this litigation.

Similarly, Fallis and Tavner are entitled to qualified immunity. Although Plaintiff alleges that Fallis was racially motivated, she offers no facts in support, and does not contradict Fallis' affidavit that the regular booking process was followed or that Plaintiff was treated no differently than anyone else being booked. Tavner is accused of attempting to "cover" for the Sheriff's Office, although it is unclear what that means in the context of allegedly violating clearly established statutory or constitutional rights.

Combs, Keller and Huddleson are also entitled to qualified immunity. No facts were presented by Plaintiff in response to Defendants' summary judgment motion that create any genuine dispute of a material fact that any of these Defendants violated any of Plaintiff's constitutional rights. Combs apparently initially provided only a 5-minute video in response to Plaintiff's request, although, following a motion to compel filed in the criminal case, another video was later provided. As for Keller, Plaintiff admits that she had no interaction with him and it appears that he was named only because his wife, Beth Keller, was Plaintiff's former supervisor and a named defendant in Plaintiff's EEOC claim which later became her wrongful termination lawsuit. Finally, while Huddleson

attended the September 9, 2015, mediation with a copy of Plaintiff's arrest records, Plaintiff herself testified that the mediator never reviewed these records.

Because there is no clearly established statutory or constitutional right shown which a reasonable person would have known was violated, Defendants' motion for summary judgment as to qualified immunity is sustained as to all Defendants with the exception of Thomas and the alleged Fourth Amendment excessive force claim.

### IV.     Conclusion

For the reasons set forth above, Defendants' Motion for Summary Judgment, Doc. #57, is SUSTAINED as to all Defendants on qualified immunity grounds except Plaintiff's claim against Thomas on the alleged excessive force claim which is SUSTAINED on other grounds.

Judgment shall be entered in favor of all Defendants and against Plaintiff.

The captioned case is hereby terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division at Dayton.

Date: March 20, 2019

WALTER H. RICE
UNITED STATES DISTRICT JUDGE